UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIFFANY PUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-1881 RLW |
| | ) |
| FANG JUNQING and | ) |
| YING LAN TRUCKING EXPRESS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This is an action for personal injuries sustained by Tiffany Pugh ("Plaintiff") as a result of a collision with a tractor-trailer owned by Ying Lan Trucking Express ("Trucking Express") and driven by Fang JunQing.[1] Trucking Express and JunQing (hereinafter collectively referred to as "Defendants") move for summary judgment on the issue of punitive damages and for a bifurcated trial on the questions of compensatory and punitive damages. Both motions are opposed.

## Background

Plaintiff's complaint includes three counts: (I) a claim of negligence against Fang arising from his operation of the tractor-trailer; (II) a claim of negligence against Trucking Express for its training, supervising, and hiring of Fang and its maintaining, repairing, and equipping of the tractor-trailer; and (III) a claim of vicarious liability of Trucking Express for the negligence of Fang. Plaintiff requests an award of punitive damages in the two negligence counts.

---

[1] Plaintiff refers to Fang JunQing as "Fang"; Defendants refer to him as "Junqing." The Court will refer to him by his surname, Fang.

Fang moved to the United States from China in November 2011. (Fang Dep. at 18, Pl. Ex 3, ECF No. 51-3.) He then took English language classes at a school in Los Angeles. (*Id.* at 17-18.) The classes ended in May 2012. (*Id.* at 18.) In November 2012, Fang got a driver's license. (Fang Dep., Def. Ex. B at 35; ECF No. 46-9.) He had not driven when in China. (*Id.*) In approximately March of 2013, he took a six-month course in a commercial truck driving school, the Class A Driving School in Los Angeles. (*Id.* at 30.) The school did not issue any certificates. (Fang Dep., Pl. Ex. 3 at 31.) In September 2013, he received his commercial driver's license ("CDL") from California. (*Id.* at 23-24.)

Fang left his job as a server in an Arizona restaurant in June 2013. (*Id.* at 46-47.) He had been in Arizona for approximately one year. (*Id.* at 19.)

At some point, Fang contacted Ying Lan about at driving job with Trucking Express, owned by Ying and her husband. (Fang Dep., Pl. Ex. 3 at 35, 37; Ying Dep. Pl. Ex. 2 at 7; ECF No. 51-2.) She manages the company; her husband maintains the trucks – at the relevant time, there were two – and trains the drivers. (*Id.* at 7-8, 10.) Ying testified Fang's parents asked her to give Fang a chance and informed her she would have to train him. (*Id.* at 16.) She had known Fang's parents in China. (*Id.* at 9.) She decided to hire Fang for four reasons. (*Id.* at 16.) First, he had a college degree. (*Id.*) Second, his parents told her he was a dutiful son with manners and a sense of responsibility. (*Id.*) Third, they entrusted him to her care. (*Id.*) Fourth, her husband had over twenty years' experience driving trucks and could train Fang. (*Id.* at 17.)

After speaking with Fang, she had him sign some forms. (*Id.* at 21.) Ying testified Fang did not fill out an application form requiring, inter alia, that he certify the information he was providing was accurate and correct. (*Id.* at 21.) She trusted him. (*Id.*) She knew when hiring Fang that he had not worked as a commercial truck driver before. (*Id.* at 22.)

2

Fang testified that the forms he completed, including one titled "Driver Proficiency and Authorized Vehicles," were explained to him in Mandarin. (Fang Dep. Pl. Ex. 3 at 48.) Had they not been, he could have taken the forms home and looked up the terms in order to understand them. (*Id.*) Ying allowed Fang "to sign and attest to his own 'Driver Proficiency' form ... four months before the subject wreck, without any management or supervisor signing or attesting to same." (Defs. Rely Ex. 1 at 4, ECF No. 56-1.) Ying testified that the forms shown her at the deposition were not interpreted for Fang because he said he could read them. (Ying Dep., Defs. Ex. A at 13.) Among the forms signed by Fang was one stating that "[d]rivers are expected to adhere to all company policies and procedures as instructed by company owner and comply with DOT [Department of Transportation] CDL regulations." (Defs. Ex. 46-3.) The driver requirements for Trucking Express included that the driver must be "[a]ble to read, write, and speak fluent English"; "[h]ave a minimum of 9 months recent, verifiable CDL experience"; and "[h]ave no more than one preventable accident in the past 12 months." (Defs. Ex. 46-4.) A DOT regulation requires a written, signed, and certified employment application, "listing among other things, social security number, residential address history, 'nature and extent of applicant's experience,' and detailed work history." (Defs. Reply Ex. 1at 4) (quoting 49 C.F.R. § 391.21).

Fang started training with Trucking Express in April 2015 and began driving for them in July 2015. (Fang Dep., Pl. Ex. 3 at 46.) Asked about a DOT regulation that a driver undergo a road test before working as a driver, Ying explained that Trucking Express considers the driver's license as proof of a road test. (Ying Dep., Pl. Ex. 51-2 at 27.) Also, her husband took Fang "on a route to see how he drove." (*Id.*)

On November 12, 2015, Fang was driving a tractor-trailer on Interstate 44 in St. Louis County when he rear-ended the stopped car ahead of him. (Defs. Ex. 46-6; Fang Dep. at 71-74.)

3

Plaintiff was the driver of the sedan. (Pugh Dep. at 33-34.) Fang was not tested for drugs after the accident. (Ying Dep. at 35.)

Fang testified in his deposition that the accident did not occur in a construction zone and there were no warning or road signs. (Fang Dep. at 70-71.) Plaintiff testified it did occur in a construction zone. (Pugh Dep., Pl. Ex. 51-7 at 29.) The police report lists the accident site as a work zone. (Defs. Ex. 46-6 at 3.) Defendants have admitted that it occurred in a construction work zone. (Defs. Reply Ex. 1 at 8.)

Fang completed an incident report on the accident in Mandarin when he returned to Los Angeles. (Fang Dep. at 13, 16.) He was questioned in his deposition about his proficiency in English. Asked if it was fair to say he was not fluent in English, Fang replied that would be "Incorrect." (*Id.* at 8.) Asked if he was fluent, he replied his "basic English [was] okay and he did not know what the questioner meant by "fluent." (*Id.*) He can read and speak English, but could not testify in English and needed an interpreter. (*Id.* at 7-9.) He does not feel that his English is at a level "well enough to study." (*Id.* at 20.) He spoke Mandarin with Ying's husband and with the other driver for Trucking Express. (*Id.* at 34, 67.) When completing forms for Trucking Express, he did so in Mandarin. (Ying Dep. at 30.) The CDL test was given in English; the testers for both the personal driver's license and the CDL spoke English. (Fang Dep. at 79.)

Twice before November 2015, Trucking Express was cited by the DOT for employing drivers who did not have the required fluency in English. (Ying Dep. at 37.) Ying was aware before November 2015 of the DOT regulations requiring the driver speak "basic English." (*Id.* at 40.)

4

In their motion for summary judgment, Defendants argue that Plaintiff has failed to make a submissible case that their conduct was so outrageous and their mental state so willful, wanton, or malicious as to support a claim for punitive damages. Specifically, there is no punitive damage case against Trucking Express because there is no evidence that Fang was not sufficiently proficient in English and the failure to require Fang to submit to drug testing is irrelevant.[2] Also, there has been no showing that the hiring of Fang in violation of Trucking Express' requirement of prior commercial driving experience and without requiring him to submit a written application is related to the collision.

Additionally, if the punitive damages claim remains, Defendants seek to bifurcate the trial on the claim for compensatory damages from the trial on the claim for punitive damages.

## Discussion

Motion for Summary Judgment. The Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56(c), the predecessor to Rule 56(a)). "The movant 'bears the initial responsibility of informing the ... [C]ourt of the basis for its motion,' and must identify 'those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)

---

[2]Defendants also argue that there is no punitive damage case against Fang because there is no evidence the proximate cause of the collision was his lack of driving experience; his alleged failure to comprehend or obey road signs; or his alleged failure to submit to drug testing after the incident. In her response, Plaintiff addresses only the arguments about Ying. The Court considers Plaintiff's claim in Count I against Fang for punitive damages to be abandoned. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

5

(quoting *Celotex Corp.*, 477 U.S. at 323) (last two alterations in original). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing a genuine issue for trial.'" *Id.* (*Celotex Corp.*, 477 U.S. at 324). The existence of a factual dispute is not enough alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law." *Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 837 (8th Cir. 2003). "To establish a genuine issue of material fact, [the movant] 'may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [the movant's favor].'" *Fatemi v. White*, 775 F.3d 1022, 1040 (8th Cir. 2015) (quoting *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)).

Plaintiff requests an award of punitive damages in the negligence count against Ying Lan. "Under Missouri law, punitive damages are available in negligence actions." *Harris v. Decker Truck Line, Inc.*, 2013 WL 1769095, *3 (E.D. Mo. Apr. 24, 2013) (citing *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. 198) (en banc)). "For an award of punitive damages in a negligence action, 'plaintiff must show (1) defendant knew or should have known, based on the surrounding circumstances that its conduct created a high degree of probability of injury, and (2) defendant showed complete indifference to, or conscious or reckless disregard for, the safety of others.'" *Id.* (quoting *Litchfield By & Through Litchfield v. May Dep't Stores, Co.*, 845 S.W.2d 596, 599 (Mo.Ct.App. 1992)). The standard of proof of a defendant's required culpable mental state is clear and convincing evidence. *May v. Nationstar Mortgage, LLC*, 852 F.3d 806, 814 (8th Cir. 2017). "Such proof can be established by direct or circumstantial evidence." *Id.* "Such evidence supporting punitive damages need not be – and often is not – separate from the evidence supporting a substantive claim." *Id.*

6

Trucking Express argues that there is no punitive damages claim against it because there has been no showing that the collision was caused by (a) Fang's English-language proficiency, (b) the failure to submit Fang to drug testing, (c) the decision to hire Fang without requiring prior commercial truck driving experience, or (d) the failure to require Fang to submit a written application.

Count II states a claim against Trucking Express for (a) "fail[ing] to adequately train Fang in the safe operation of its vehicle"; (b) "fail[ing] to adequately supervise Fang in the safe operation of its vehicle"; (c) "negligently hir[ing] and fir[ing] Fang"; (d) "negligently entrust[ing] Fang with the operation of its vehicle"; (e) "fail[ing] to maintain and repair its vehicle to ensure safe operating condition"; and (f) "fail[ing] to equip its vehicle with proper safety features to prevent wrecks, including adequate warnings and sensors." (Compl. at 3-4, ECF No. 3.)

"There are at least three distinct theories under which an employer might be held to have derivative or dependent liability for the conduct of an employee under Missouri law." *McHaffie By & Through McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. 1995) (en banc). One is under the theory of *respondeat superior*. *Id.* Another is a "theory under which an employer may be held liable is that of 'negligent entrustment.' That theory requires proof that (1) the entrustee is incompetent, (2) the entrustor knew or had reason to know of the incompetence, (3) there was an entrustment of a chattel, and (4) the negligence of the entrustor concurred with the negligence of the entrustee to harm the plaintiff." *Id.* The third is a theory of "negligent hiring." *Id.* (interim quotation omitted.) In this third theory, "liability turns on whether there are facts from which the employer knew of should have known of a particular dangerous proclivity of an employee

7

followed by employee misconduct consistent with such dangerous proclivity by the employee." *Id.* The second and third theories are at issue in Count II.

The record before the Court is that Fang did not recall seeing any construction zone signs before the incident and Fang testified the accident did not occur in a construction zone. It did. (*See* Defs.' Reply § 73, ECF No. 56-1.) Regardless whether Plaintiff could recall seeing any signs, she was aware she was in a construction zone because there were traffic cones placed to reduce the driving lanes to two. (Pugh Dep. at 29-30.) The police report noted the accident occurred in a work zone and that Fang was driving too close and too fast. (Defs. Ex. 11 at 3, ECF No. 46-6.)

Trucking Express isolates three instances of its alleged failure to follow DOT regulations and one of its alleged failures to follow its own policies when hiring Fang and then argues that there is a fatal lack of causation between each instance and the collision. This strategy avoids the question whether a pattern established by Trucking Express's decision to hire a person (a) based, in part, on considerations he had a college degree and had parents known to its owner and (b) without requiring (i) any prior commercial driving experience, (ii) a road test apart from one he had taken two years earlier to obtain his CDL, (iii) more than a basic knowledge of English, and (iv) he complete a written application evidences "complete indifference to, or conscious or reckless disregard for, the safety of others," *Harris*, 2013 WL 1769095 at *3, sufficient to present a submissible case of punitive damages. *Cf. Kyles v. Celadon Trucking Servs., Inc.*, 2017 WL 4273622, (W.D. Mo. Sept. 26, 2017) (granting summary judgment to defendants on punitive damages claim supported only by "unsupported generalities" and not by proof; defendant's driver had twenty-seven years' experience driving a truck, "could read and speak the English language," and "had successfully completed a road test for [the defendant]"). The failure to

require Fang to take a drug test, as required by its own policies, may also be found to be part of the pattern.

As noted in *Harris,* "Missouri courts allow evidence of failure to follow motor carrier regulations and industry standards to support awards of punitive damages against commercial motor carriers." *Id.* at 5. *Accord Ixtepan v. Beelman Truck Co.,* 2014 WL 6611469, *1 (E.D. Mo. Nov. 20, 2014) (declining to dismiss punitive claim against defendants whose driver ignored stop sign and made an improper left turn, thereby causing an accident). In *Burroughs v. Mackie Moving Sys. Corp.,* 2010 WL 1254630, *5 (E.D. Mo. Mar. 24, 2010), the district court denied the defendant's motion to exclude the conclusions of an expert witness that defendant had violated its own policies in hiring the driver of the truck that caused the crash. The court found that such conclusions were relevant to the plaintiffs' punitive damages claim. *Id.*

Defendants cite *Manzella v. Gilbert-Magill Co.,* 965 S.W.2d 221 (Mo.Ct.App. 1998), for their position that Trucking Express's requirement of fluency in English was irrelevant because an internal policy does not impose a legal duty that does not otherwise exist. This reliance is unavailing for three reasons. First, the policy was adopted, according to Ying, to avoid further citations by the DOT for hiring drivers who did not meet the qualifications of 49 C.F.R. § 391.11(b)(2) ("[A] person is qualified to drive a motor vehicle if he/she – [c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquires, and to make entries on reports and records.") Second, there is conflicting evidence whether Fang could satisfy the DOT requirement the policy was meant to support. The police report includes his explanation in English of what he was doing at the time of the collision, but he completed his incident report in Mandarin. Third, the holding in *Manzella* is inapposite. The policy at issue in

that case was underwriting guidelines about how much insurance coverage should be placed. *Id.* The plaintiffs sought to hold the defendants liable for not issuing them insurance for the guideline amount when their request had simply been for insurance in an amount that their agent thought they needed. *Id.* at 222. The court held that the underwriting guidelines did not create a legal duty because those standards were not the same as industry standards and were not relevant to a duty which the defendant did have. *Id.* at 229. Trucking Express's English requirement was relevant to a duty it had – to make sure Fang was qualified to drive its truck.

For the foregoing reasons, Defendants' motion for summary judgment on the issue of punitive damages shall be granted as to Fang JunQing and denied as to Ying Lan Trucking Express.

Motion for Bifurcated Trial. Defendants also request that the Court bifurcate the trial on Plaintiff's claim for compensatory damages from the trial on her claim for punitive damages to avoid possible prejudice. Because summary judgment will be granted as to the punitive damages claim against Fang JunQing, only the claim for punitive damages against Trucking Express remains.[3] Defendants argue that evidence the DOT had issued citations to Trucking Express for employing drivers without the required command of English is irrelevant because there has been no showing that Fang was unable to communicate sufficiently in English with law enforcement personnel.[4]

---

[3]Defendants originally requested that evidence of their net worth also not be introduced in the trial of Plaintiff's claim for compensatory damages. After Plaintiff responded that she did not intend to offer such evidence, Defendants replied that they reserve the right to introduce such as a mitigating factor.

[4]In their motion for summary judgment, Defendants challenged four aspects of their hiring of Fang as not supporting punitive damages. *See* page 7, *supra*. Only the English-language proficiency aspect is raised in their motion for bifurcated trial.

10

Federal rules govern the question of bifurcation of the issues of liability and punitive damages. *EEOC v. HBE* Corp, 135 F.3d 543, 551 (8th Cir. 1998). Rule 42(b) of the Federal Rules of Civil Procedure authorizes a court to bifurcate separate claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Under this rule, the "[c]onsolidation of issues and claims is committed to the discretion of the trial court." *EEOC*, 135 F.3d at 551. Factors to be considered include "the severability of the issues, . . . prejudice to the parties, and the effect of bifurcation on the potential for settlement." *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada*, 2006 WL 1026992, *2 (E.D. Mo. Apr. 14, 2006). "The potential benefits of bifurcation must outweigh the potential detriment." *Id.*

In the instant case, they do not. As discussed above, there is conflicting evidence whether Fang was sufficiently fluent in English to satisfy the DOT requirement, and whether any failings in that regard contributed to the accident. Defendants' motion will be denied as moot as to any evidence relevant to a punitive damage claim as to Fang JunQing and denied as to Ying Lan Trucking Express.[5]

## Conclusion

The punitive damages claim of Tiffany Pugh in Count I against Fang JunQing is dismissed. Her punitive damages claim in Count II against Ying Lan Trucking Express is not dismissed. The trial on that claim will not be bifurcated from the trial on her claim for compensatory damages.

For the foregoing reasons,

---

[5] Defendants stress that they have admitted that Fang was at fault in the accident for failing to keep a proper distance between his truck and Plaintiff's car. An admission of fault by Defendants does not foreclose Plaintiff from offering evidence of such. *See* <u>Cogdill v. Flanagan ex rel. Larson</u>, 410 S.W.3d 714, 722 (Mo.Ct.App. 2013).

11

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment on the issue of punitive damages is GRANTED as to Fang JunQing and DENIED as to Ying Lan Trucking Express. [ECF No. 44]

**IT IS FURTHER ORDERED** that Defendants' motion to bifurcate is DENIED. [ECF No. 38]

Dated this 20th day of March, 2018.

RONNIE L. WHITE
**UNITED STATES DISTRICT JUDGE**